**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Flagstaff Medical Center, Inc., | ) |
| Plaintiff, | ) No. CV-09-8069-PCT-PGR |
| vs. | ) |
| Kathleen Sebelius, Secretary Department of Health and Human Services, | ) ORDER |
| Defendant. | ) |

Pending before the Court is Flagstaff Medical Center's Motion for Summary Judgment (Doc. 17) and Defendant's Cross-Motion for Summary Judgment (Doc. 22). Having considered the parties' memoranda in light of the administrative record, the Court finds that both motions should be granted in part and denied in part.[1]

---

[1] The Court notes that while oral argument has been requested, the Court has dispensed with it because the Court does not believe that a hearing would aid the decisional process.

The Court further notes that it has intentionally not discussed every argument raised by the parties and that those arguments not discussed are considered by the Court to be unnecessary to the resolution of the parties'
(continued...)

Background

This action, which arises under the Medicare Act, Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, involves a dispute between plaintiff Flagstaff Medical Center, a non-profit acute care hospital that is a provider of Medicare services, and Kathleen Sebelius, the Secretary of the Department of Health and Human Services ("the Secretary"), regarding the amount of the plaintiff's reimbursement for air and ground ambulance services it provided as part of its hospital operations to Medicare beneficiaries in the fiscal years ending in June, 1998 through June, 2001.

The Centers for Medicare and Medicaid Services ("CMS"), an agency within the Department of Health and Human Services, administers the Medicare program.[2] In order to obtain Medicare reimbursement[3], a health care provider files an annual report showing the costs it incurred during the fiscal year and the portion of those costs to be allocated to Medicare; the report is filed with the provider's fiscal intermediary, which is typically a private insurance company acting under contract with the CMS. After auditing the provider's cost report, the fiscal intermediary determines the amount of reimbursement owed to the provider by Medicare through the issuance of a notice of program reimbursement ("NPR").

---

[1](...continued)
motions. This includes the Secretary's objections to the plaintiff's extra-record evidence since the Court found no need to consider any of the objected-to submissions in resolving the cross-motions.

[2] Prior to being renamed the CFS in July 2001, the agency was named the Health Care Financing Administration. For the sake of simplicity, all references to the agency in this Order will be to its current name.

[3] This summary pertains to the procedures in effect at the time at issue.

If the provider is dissatisfied with the NPR and the amount in controversy is at least $10,000, it may file an appeal with the Provider Reimbursement Review Board ("PRRB"), an administrative review panel appointed by the Secretary that has the power to conduct an evidentiary hearing and affirm, modify or reverse the intermediary's NPR determinations. The PRRB's decision constitutes the Secretary's final administrative decision regarding the amount of reimbursement unless the PRRB's decision is timely reversed, affirmed or modified by the Secretary's delegate, the Administrator of the CMS. If it meets certain jurisdictional prerequisites, a Medicare provider dissatisfied which the final administrative decision may obtain judicial review. <u>University Medical Center of Southern Nevada v. Thompson</u>, 380 F.3d 1197, 1199 (9th Cir.2004).

In order to improve an administratively burdensome payment methodology that resulted from the reasonable cost basis of reimbursing Medicare providers of ambulances services, Congress, pursuant to the Balanced Budget Act of 1997 ("BBA"), mandated the establishment of a national fee schedule to govern Medicare reimbursement rates for ambulance service providers.[4] 42 U.S.C. § 1395m(l). The BBA required the Secretary to apply the revised fee schedules to services furnished on or after January 1, 2000, but the Secretary did not in fact enact the new fee schedule until April 1, 2002. Because the mandated fee schedule was not to take effect immediately, Congress provided that the Secretary in the interim was to pay for outpatient ambulance services provided by hospitals on the reasonable cost basis set forth in 42 U.S.C. § 1395x(v)(1)(U), or if applicable, the fee schedule established by § 1395m(l). 42 U.S.C.

---

[4] The BBA's amendments to the Medicare Act were designed to combat rising Medicare costs.

§ 1395l(t)(10). In calculating the reasonable cost of ambulance services, the BBA also established a cost per trip limit. 42 U.S.C. § 1395x(v)(1)(U). The Medicare Act grants the Secretary broad discretion to promulgate regulations establishing the methods to be used and the items to be included in determining providers' reasonable costs.[5] Good Samaritan Hospital v. Shalala, 508 U.S. 402, 405, 113 S.Ct. 2151, 2154 (1993) ("Rather than attempt to define 'reasonable cost' with precision, Congress empowered the Secretary to issue appropriate regulations setting forth the methods to be used in computing such costs."); 42 U.S.C. § 1395ff(a)(1) ("The Secretary shall promulgate regulations and make initial determinations with respect to [Medicare] benefits ... in accordance with those regulations[.]")

In determining the Medicare reimbursement due the plaintiff for the cost reporting periods at issue, the plaintiff's fiscal intermediary applied § 1395x(v)(1)(U)'s interim cost limits to the plaintiff's ambulance costs. In doing so, the intermediary applied a single, blended limit to both ground and air ambulance costs and the intermediary determined the plaintiff's per trip limit for each affected cost reporting period based on the reasonable costs the plaintiff incurred in the immediately preceding cost reporting period. The intermediary further applied the per trip cost limit methodology to the plaintiff's ambulance costs incurred after January 1, 2000 due to the untimely implementation of the required national ambulance fee schedule.

The plaintiff appealed its fiscal intermediary's NPRs for the fiscal years at issue to the PRRB; the appeals were consolidated into a single appeal before the

---

[5] The reimbursement regulations are found within 42 CFR pt. 413.

PRRB. The plaintiff, contending that the amount of Medicare funds in controversy was $916,320, raised three major issues on appeal to the PRRB: (1) that the intermediary misinterpreted the BBA by requiring the plaintiff's per trip limit to be determined based upon the costs incurred by the plaintiff in the immediately preceding cost reporting period rather than using 1997 as the base year for purposes of calculating the plaintiff's per trip limits in fiscal years 1999 forward; (2) that the intermediary's use of a single per trip limit for both air and ground ambulance services in all years at issue was improper given the large disparity in the nature of these services and their respective costs; and (3) that CMS did not have the authority to apply the per trip limits imposed by the BBA after January 1, 2000, notwithstanding that the ambulance fee schedule reimbursement methodology was not implemented on time.

On December 18, 2008, the PRRB issued a decision that affirmed CMS's position regarding the first two issues, but ruled for the plaintiff on the third issue, holding that no statutory or regulatory provision extended the cost per trip limits beyond January 1, 2000. As a result, the PRRB ordered CMS to reimburse the plaintiff under principles of reasonable cost reimbursement for Medicare-related ambulance services between January 1, 2000 and April 1, 2002.

At the request of the plaintiff's fiscal intermediary, the Administrator reviewed the PRRB's decision, and on February 24, 2009, issued a decision that affirmed the PRRB on the first two issues, but reversed the PRRB's determination that CMS had no authority to apply the per trip limits after January 1,2000.[6]

---

[6] The Administrator's decision was actually issued by CMS's acting deputy administrator, to whom the Administrator delegated the authority to review PRRB's decisions. For purposes of this Order, the Court refers to any action

(continued...)

The plaintiff, noting that there is a statutory and regulatory deadline by which the Administrator must issue a decision reviewing a PRRB's decision, requested that the Administrator's decision be vacated as untimely. Underlying the plaintiff's request was its contention that it received its copy of the PRRB's decision on December 23, 2008, as evidenced by its time stamp on the PRRB's cover letter. The Administrator refused to vacate the decision, and subsequently refused to reconsider that determination, based on the Administrator's belief that the date stamp relied upon by the plaintiff had been hand-altered by the plaintiff and based on the plaintiff's failure to provide additional information requested by the Administrator related to the timing of the plaintiff's receipt of the PRRB's decision. The plaintiff has augmented the administrative record in part by submitting with its summary judgment motion an affidavit from an administrative assistant in the plaintiff's administration department, who states that she received the PRRB's decision on December 23, 2008 and dated stamped it as such, but then hand-wrote a three on the "23" date because the ink on the date stamp was dry and the stamped "3" only faintly appeared.

Discussion

A. Reviewable Decision

The threshold issue before the Court is whether the Administrator's decision or the PRRB's decision constitutes the final administrative decision that is subject to judicial review. The Court agrees with the plaintiff that it is the PRRB's decision that constitutes the Secretary's final decision for review purposes inasmuch as the Administrator's decision was untimely.

---

[6](...continued)
taken by a deputy administrator as being taken by the Administrator.

- 6 -

Pursuant to 42 U.S.C. § 1395oo(f)(1), "[a] decision of the [Provider Reimbursement Review] Board shall be final unless the Secretary ... within 60 days after the provider of services is notified of the Board's decision, reverses, affirms, or modifies the Board's decision." In accordance with the statute, the regulations promulgated by the Secretary provide in relevant part that the PRRB's decision "is final and subject to judicial review" if it is a hearing decision and "is not reversed, affirmed, modified, or remanded by the Administrator ... within 60 days of the date of receipt by the provider of the Board's decision." 42 C.F.R. § 405.1877(a)(3).[7] The regulations provide that a Medicare provider is conclusively presumed to have received the PRRB's decision five days after the issuance of the decision unless the presumption is overcome by a preponderance of the evidence showing that the decision was actually received by the provider on a later date, 42 C.F.R. § 405.1801(A)(1)(iii), and that the rendering date of the Administrator's decision for purposes of calculating the 60-day limit is the date the Administrator signs the decision. 42 C.F.R. § 405.1875(a)(1). The parties do not dispute that the PRRB issued its decision on December 18, 2008, that the presumptive receipt date of that decision by the plaintiff was December 23, 2008, that the plaintiff claims to have actually received the PRRB's decision on December 23, 2008, and that the Administrator's decision was signed on February 24, 2009. The parties also do not dispute that if the plaintiff's date of receipt of the PRRB's decision was December 23, 2008, then the Administrator's

---

[7] *See also,* 42 C.F.R. § 405.1877(b)(4) ("A Board hearing decision ... is final and binding on the parties to the Board appeal unless the hearing decision is reversed, affirmed, modified, or remanded by the Administrator ... no later than 60 days after the date of receipt by the provider of the Board's decision.")

- 7 -

decision was untimely as it was issued one day late.[8]

The Court need not, and does not, rely on the plaintiff's extra-record evidence regarding its date of receipt of the PRRB's decision because the plaintiff is conclusively presumed to have received that decision on December 23, 2008. Under the controlling regulation, it is the Secretary's burden to rebut the presumptive receipt date by establishing by a preponderance of the evidence that the plaintiff actually received the PRRB's decision on some date after December 23, 2008, and the Secretary has made no such showing. As the Secretary concedes in her reply memorandum, she "is not in a position to know on what date Plaintiff received the Board's decision[.]" (Doc. 32 at 2-3).[9]

Since the Administrator accepted review of the PRRB's decision but failed to render a decision within the required 60-day period, the Administrator's "inaction constitutes an affirmation of the Board's decision by the Administrator[.]" 42 C.F.R. § 405.1877 (b)(4). Since the PRRB's decision constitutes the Secretary's final decision for judicial review purposes, the issues before the Court

---

[8] As calculated by the method required by 42 C.F.R. § 405.1801(d)(3) - since the 60th day after December 23, 2008 was a Saturday, the due date for the Administrator's decision was Monday, February 23, 2009.

[9] The Court rejects the Secretary's argument that the presumption was overcome when the plaintiff submitted a receipt document that contained a hand-altered date of receipt and then refused to provide an explanation to her as to why the date on the document had been altered. Even if the Court were to accept the Secretary's implied premise, *i.e.* that the plaintiff had the date on the receipt stamp hand-altered in order to conceal the actual date of receipt, and the Court notes that the record contains no such evidence that was the plaintiff's intent, such speculation does not constitute a preponderance of evidence that the plaintiff actually received the PRRB's decision sometime after December 23, 2008.

for review are thus just the two issues decided adversely to the plaintiff by the PRRB.[10]

The Court's review of the Secretary's decision, as set forth by the PRRB, is governed by the judicial review provision of the Administrative Procedure Act ("APA"). Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512, 114 S.Ct. 2381, 2386 (1994); County of Los Angeles v. Leavitt, 521 F.3d 1073, 1078 (9th Cir. 2008). Under the APA's narrow standard of review, the Court may set aside the Secretary's decision only if it finds that decision to be arbitrary, capricious, an abuse of discretion, not in accordance with the law, or unsupported by substantial evidence on the record taken as a whole. 5 U.S.C. § 706(2). While this highly deferential standard presumes that the Secretary's action is valid, Providence Yakima Medical Center v. Sebelius, _ F.3d _, 2010 WL 2875530, at *7 (9th Cir. July 23, 2010); *see* Robert F. Kennedy Medical Center v. Leavitt, 526 F.3d 557, 562 (9th Cir.2008) (The broad deference granted to the Secretary in her interpretations of the Medicare Act is "especially warranted" given that the "complex and highly technical" nature of the Medicare program), the Court must nevertheless reject a statutory construction implemented by the Secretary that is contrary to clear congressional intent or that frustrates the policy that Congress sought to implement. French Hospital Medical Center v. Shalala, 89 F.3d 1411, 1416 (9th Cir.1996).

---

[10] The Court thus does not reach the issue of whether the PRRB properly resolved the third issue, *i.e.* whether CMS had the authority to set per trip limits after January 1, 2000, or any issue raised by the plaintiff concerning the propriety of the Administrator's refusal to vacate as untimely the decision reviewing the PRRB's decision, or any issue raised by the Secretary concerning whether the plaintiff has waived certain arguments by not raising them before the Administrator subsequent to the PRRB's decision.

B. Use of Rolling Base Years to Calculate the Plaintiff's Annual Per Trip Limits

The plaintiff argues that the Secretary erred in applying what it describes as a series of rolling base years in calculating its per trip limits during the time period at issue. According to the plaintiff, each fiscal year the CMS recalculated its per trip limit using the prior year's costs and number of trips, and then applied the lower of its prior year's cost per trip or actual costs in determining its inflation-adjusted reimbursement. The plaintiff's contention is that the unambiguous language and intent of the governing statute, 42 U.S.C. § 1395x(v)(1)(U), instead required that each of its post-1997 per trip limits during the interim period be calculated using its 1997 base year limit and adjusting that limit annually by an inflation factor. As a result, the plaintiff seeks a declaration that it is entitled to reimbursement for air and ground ambulance services through December 31, 1999 in accordance with its reasonable costs using FYE 1997 as the sole base year.

The statute provides in relevant part that

> [i]n determining the reasonable cost of ambulance services ... provided during fiscal year 1998, during fiscal year 1999, and during so much of fiscal year 2000 as precedes January 1, 2000, the Secretary shall not recognize the costs per trip in excess of costs recognized as reasonable for ambulance services provided on a per trip basis during the previous fiscal <u>year</u> ..., increased by the percentage increase in the consumer price index for all urban consumers (U.S. city average) as estimated by the Secretary for the 12-month period ending with the midpoint of the fiscal year involved reduced by 1.0 percentage point.

(Emphasis added). The plaintiff's position is that by using the term "year" instead of the plural "years," Congress plainly signaled its intent that there be only a single base year and that 1997, as the fiscal year previous to the implementation of § 1395x(v)(1)(U), be used as the sole base year for purposes of calculating the per trips limits for future years. The PRRB, which noted that the statute could

- 10 -

reasonably be interpreted as suggested by both sides, adopted the CMS's position that the term "year" should be interpreted as referring, in any given year, to the immediately preceding fiscal year:

> The Intermediary correctly determined the Provider's per trip limits based upon the costs incurred by the Provider in the fiscal year immediately preceding each cost reporting period, e.g., the limit determined from the Provider's 1997 cost report is updated for inflation and applied to the Provider's 1998 costs, and a limit determined from the Provider's 1998 cost report is updated for inflation and applied to the Provider's 1999 costs, and so on.

(A.R. at 37). The Court concludes that the Secretary's interpretation should be upheld.

The Secretary's interpretation of ambiguous statutory language in the Medicare Act, which the Court assumes that the "previous fiscal year" language is for purposes of resolving the pending cross-motions, must be sustained if the statute does not unambiguously forbid the Secretary's interpretation and the interpretation, for other reasons, does not exceed the bounds of the permissible. Barnhart v. Walton, 535 U.S. 212, 218, 122 S.Ct. 1265, 1269 (2002) (citing to Chrevon, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778 (1984)); Good Samaritan Hospital v. Shalala, 508 U.S. at 414, 113 S.Ct. at 2159 ("Confronted with an ambiguous statutory provision, we generally will defer to a permissible interpretation espoused by the agency entrusted with its implementation."); Arizona Health Care Cost Containment System v. McClellan, 508 F.3d 1243, 1253 (9th Cir.2007) ("If a statute's language can reasonably be construed in more than one way, a court may not substitute its own construction of the statute for a reasonable interpretation made by the agency that Congress entrusted to implement the legislation.")

In this case, the Court concludes that the Secretary's interpretation, under any standard of deference applicable to it, is not arbitrary and capricious inasmuch as her interpretation is not expressly forbidden by the statutory language at issue and, even if it is not the sole permissible construction of the statute, it is clearly an entirely permissible and plausible construction as it is consistent with the text, context, and purpose of the statute.

C. Use of Blended Per Trip Limits

The plaintiff also argues that the Secretary's use of a single, blended rate for determining its reimbursable ground and air ambulance costs during the interim period at issue violated the Medicare Act; its contention is that reimbursement should have been made using a separate per trip limit for each type of ambulance service. Neither side maintains that Congress directly addressed the precise question at issue in the BBA.

The Secretary never issued a formal regulation governing the calculation of the ambulance cost per trip limit during the interim period; rather, the Secretary, acting through the CMS, provided ambulance service reimbursement guidance through various administrative memoranda. For example, in February 1998, the CMS, through its Program Memorandum A-98-2, indicated to providers that the average Medicare ambulance cost per trip for purposes of § 1395x(v)(1)(U) would be calculated using a consolidated rate (A.R. at 283); the CMS subsequently issued Administrative Bulletin 2559 in April 1999, which involved "questions and answers" elaborating on the calculation of the interim ambulance per trip limits, wherein it stated that:

> You are correct that A-98-2 provides for only one cost per trip per provider and does combine ground and air services. The law [§ 1395x(v)(1)(U)] requires a limit to be established on a cost per trip basis. Therefore, we have determined that this is a single cost per

trip limit per provider. We recognize that by doing so some providers will benefit and others will be disadvantaged; however, this is only an interim measure until the ambulance fee schedule is implemented.

(A.R. at 146).

The PRRB, relying solely on the Secretary's previously adopted interpretation of 42 U.S.C. § 1395x(v)(1)(U), rejected the plaintiff's position:

> It is undisputed that more accurate program payments would result if there were separate per trip limits for air ambulance and ground ambulance costs as opposed to a single limit applicable to each of these services combined. Moreover, it is undisputed that using a single limit likely resulted in some providers being overpaid while others were underpaid. However, there is no language in the statute addressing this matter or indicating in any way that separate limits must be used to distinguish air ambulance service costs from ground ambulance costs. The Secretary also found no provision in the law that mandated this distinction be made and explained its rationale for using a single limit in a Question and Answer issuance dated April 23, 1999, and in the preamble to the pertinent regulation. 67 Fed. Reg. 9117 (Feb. 2002). Based on these facts, the Board finds the Secretary's interpretation of the statute reasonable and defers to the Secretary's decision to use a single limit applicable to both air and ground ambulance costs during the interim period beginning on October 1, 1997 and ending prior to January 1, 2000.

(A.R. at 38.) (footnote omitted).[11]

The parties dispute, albeit both very cursorily, what level of deference the Court should apply to the Secretary's interpretation at issue. Since the issue was resolved by the Secretary based on an interpretation developed through administrative memoranda-type documents providing guidance as to the meaning of the statutory language, rather than through an interpretation established through formal public notice-and-comment rulemaking or established through case-by-case formal adjudications, the Court concludes that the Secretary's

---

[11] The Court notes that the PRRB was required by regulation to "afford great weight to interpretive rules, general statements of policy ... established by CMS" in resolving the plaintiff's appeal. 42 C.F.R. § 405.1867.

interpretation warrants the lesser <u>Skidmore</u>-style deference rather than <u>Chevron</u> deference. *See* <u>Christensen v. Harris County</u>, 529 U.S. 576, 587, 120 S.Ct. 1655, 1662-63 (2000) ("Interpretations such as those in opinion letters-like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law - do not warrant *Chevron*-style deference. Instead, interpretations contained in formats such as opinion letters are entitled to respect under our decision in *Skidmore v. Swift*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944), but only to the extent that those interpretations have the power to persuade.") (Internal citations and quotation marks omitted); <u>Community Hospital of Monterey Peninsula v. Thompson</u>, 323 F.3d 782, 791 (9th Cir.2003) ("Pronouncements in manuals like the PRM [CMS's Provider Reimbursement Manual], which do not have the force of law, are entitled to less deference than an interpretation arrived at after a formal adjudication or notice-and-comment rulemaking.") The weight to be accorded the Secretary's interpretation under <u>Skidmore</u> depends on its "power to persuade," which is a function of the thoroughness evident in the Secretary's consideration of the issue and the validity of her reasoning. <u>United States v. Mead Corp.</u>, 533 U.S. 218, 228, 121 S.Ct. 2164, 2172 (2001); <u>Resident Councils of Washington v. Leavitt</u>, 500 F.3d 1025, 1037 (9th Cir.2007). In this case, the Court concludes that the Secretary's interpretation at issue is entitled to little deference in the Court's reasonableness review notwithstanding the Secretary's specialized skill in implementing the complex Medicare program due to the interpretation's lack of persuasiveness.

The plaintiff argues that the blended rate policy violates the Medicare Act because it is not a reimbursement methodology based on "reasonable cost"

principles and the resulting under-reimbursement violates the anti-cross-subsidization tenet of the Act. The Court agrees.

Since there was no national ambulance fee schedule in place during the time at issue, the BBA required that the "costs per trip" limitation placed on ambulance service reimbursement was to be calculated using the established "reasonable cost" methodology. 42 U.S.C. § 1395x(v)(1)(U). The Medicare Act broadly defines "the reasonable cost of any services" as "the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services[.]" 42 U.S.C. § 1395x(v)(1)(A). This statutory provision directs the Secretary that any regulations implementing this reimbursement principle must in part take into account the provider's direct and indirect costs of furnishing Medicare services "in order that, under the methods of determining costs, the necessary costs of efficiently delivering covered services to individuals covered by [Medicare] will not be borne by individuals not so covered[.]" *Id.* Thus, while the Secretary had substantial discretion to determine how to calculate Medicare reimbursement in compliance with § 1395x(v)(1)(U), such discretion was limited by the mandates of § 1395x(v)(1)(A) that the method chosen had to be based on the application of reasonable cost principles, County of Los Angeles v. Sullivan, 969 F.2d 735, 742 (9th Cir.1992) ("In sum, Congress authorized the Secretary to promulgate all manner of reimbursement calculation methods so long as they reasonably reflected actual costs[,]") and had to prevent cross-subsidization. Community Hospital of Monterey Peninsula v. Thompson, 323 F.3d at 786 and n.1 (Court, noting that "[t]he Medicare statute and regulations prohibit cost shifting," used as an example of prohibited cost shifting the fact that "when Medicare covers only 80

percent of a procedure's cost, the hospital's other patient's would have to pay for the 20 percent loss through higher medical bills."); Providence Hospital of Toppenish v. Shalala, 52 F.3d 213, 214 (9th Cir.1995).[12]

The Secretary does not dispute, or at least has not controverted, the accuracy of the plaintiff's contention that there was a significant difference between the costs associated with its Medicare-related ground ambulance services and its air ambulance services during the period at issue or that the blended rate reimbursement policy significantly disadvantaged it and forced it to recoup its Medicare under-reimbursement through higher charges to non-Medicare patients.[13] Notwithstanding this, neither the Secretary's decision at

---

[12] The Secretary's general regulations related to Medicare reimbursement of reasonable costs of patient care recognize that a provider is entitled to proper reimbursement that reflects differences in the scope of services and the intensity of care. *See e.g.,* 42 C.F.R. § 4134.9(c)(3) ("The reasonable cost basis of reimbursement contemplates that the providers of services would be reimbursed the actual costs of providing quality care however widely the actual costs may vary from provider to provider and from time to time for the same provider.")

[13] The plaintiff argued to the PRRB that its air ambulance costs were approximately 10 times those of its ground ambulance costs on a per trip basis and that the use of the blended per trip limit for the years at issue (FYE 6/30/98 through FYE 6/30/2001) resulted in an under-reimbursement for air ambulance services in the cumulative amount of approximately $736,000. (A.R. at 43, 200 and 408).

While Congress did not expressly require separate limits for air and ground ambulance services in the BBA, Congress clearly was aware that financial distinctions existed between such services because it required the Secretary, in drafting the national ambulance service fee schedule, to "establish definitions for ambulance services which link payments to the type of services provided" and to consider appropriate "operational differences" in ambulance services. 42 U.S.C. § 1395m(l)(2). The Secretary did so in that the ambulance
(continued...)

- 16 -

issue, nor the CMS's elucidations regarding the administrative interpretation underlying that decision, articulate any explanation as to how the relied-upon blended rate policy sensibly conforms with the "reasonable cost" provision or the cross-subsidization ban aspects of §1395x(v)(1)(A), which are both incorporated into § 1395x(v)(1)(U) and into the Secretary's reimbursement-related regulations. The Secretary's explanations in fact expressly recognized that the blended rate policy would result in providers being either under-reimbursed or over-reimbursed for ambulance services, all without any reasoned analysis as to how either scenario results in a reimbursement that reasonably reflects actual costs. The Secretary's rationalization that the blended rate policy was appropriate despite its acknowledged failure to fully reimburse providers of both air and ground ambulance services because the policy was only temporary cannot justify the policy's departure from the reasonable cost and cost-shifting tenets of the Medicare Act. Simply stated, the Court cannot conclude from the Secretary's cursory explanations in the administrative record for the blended rate policy that she considered the effects of the policy in a sufficiently reasoned fashion, or that the policy constitutes a reasonable accommodation of the reimbursement policy that Congress sought to implement. *See* Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mutual Automotive Ins. Co., 463 U.S. 29, 43, 103 S.Ct. 2856, 2867 (1983) (Supreme Court noted that an administrative interpretation that entirely fails to consider an important aspect of the problem is

---

[13](...continued)
service fee schedule that was subsequently adopted not only expressly distinguishes between the cost of ground and air ambulance services for reimbursement purposes, it established several categories of ground ambulance services and two categories (fixed wing and rotary) of air ambulance services. (A.R. at 159).

arbitrary and capricious.) Therefore,

IT IS ORDERED that Flagstaff's Medical Center's Motion for Summary Judgment (Doc. 17) is granted in part and denied in part.

IT IS FURTHERED ORDERED that Defendant's Cross-Motion for Summary Judgment (Doc. 22) is granted in part and denied in part.

IT IS FURTHER ORDERED that the defendant's determination, as reflected in the decision of the Provider Reimbursement Review Board, to reimburse the plaintiff using a single trip ambulance cost limit applicable to both air ambulance services costs and ground ambulance service costs combined is reversed; the Secretary shall recalculate, as necessary, the plaintiff's reimbursement for ambulance services for Medicare patients during the time period at issue using separate per trip limits for ground ambulance services and air ambulance services. The Provider Reimbursement Review Board's decision is affirmed in all other respects.

IT IS FURTHER ORDERED that the plaintiff, after consultation with the defendant, shall submit a proposed form of judgment no later than September 17, 2010. Any objection by the defendant to the proposed form of judgment shall be filed no later than September 27, 2010.

DATED this 29th day of August, 2010.

Paul G. Rosenblatt
United States District Judge